CHARLES L. MENDEL, Respondent, *v.* PERCY A. PICKRELL,
Appellant.

APPEAL from a judgment rendered in favor of the plaintiff in
the Municipal Court of the city of New York, eleventh district,
borough of Manhattan.

Bushby & Berkeley, for appellant.

William M. Coleman, for respondent.

GREENBAUM, J.   The defendant appeals from a judgment ren-
dered against him in the Municipal Court in an action brought
by plaintiff to recover the sum of $250, upon an alleged breach of
contract.

In his complaint, plaintiff alleges the making of a written
contract on January 5, 1899, with defendant, whereby in con-
sideration of the payment in installments of the sum of $250 to
the defendant, the latter undertook to assist in the formation of a
certain corporation which the plaintiff was interested in organizing.

In addition to the absolute undertaking to pay the $250, it was
provided in said agreement that upon the formation of the com-
pany, the profits that might be realized thereunder were to be
apportioned between them in the rate of 60 and 40 per cent.

Pursuant to the terms of this agreement plaintiff paid defend-
ant the sum of $250 as therein provided, the first payment being
made on March 12, 1899.

On the 25th of April, 1899, the plaintiff procured a paper writ-
ing from defendant in which the latter agreed that " in case said
contract (referring to the agreement of January fifth) is not
fulfilled and said mentioned company is not formed through my
efforts within a reasonable time to return or refund to said Mendel
the sum of two hundred and fifty dollars, which he the said Mendel
has paid me for that purpose."

Upon the trial the following colloquy took place:   " Defend-
ant's Counsel:   I would like to ask whether counsel sues on the
original agreement (Jan'y 5) or this paper (meaning the unilateral
memorandum of April 21st).   Plaintiff's Counsel:   We sue on
this paper (Apr. 21st).   Defendant's Counsel:   Do you claim
that this is a modification of the original agreement?   Plaintiff's
Counsel:   No sir."

Upon the cross-examination of plaintiff he also stated that the alleged agreement of April twenty-first was not a modification of the original agreement and explained the manner in which he secured the April memorandum.   He testified, " after I felt he was not going to carry it out (referring to the January agreement) I spoke to him and he said, ' well I will refund it to you.'   I says, ' Will you put in writing? ' and he says ' Yes.' "

Defendant's version of the circumstances attending the signing of the paper in question is as follows:   " Mr Mendel came to me and said he thought we had better try to get up that company and do something.   I said, I will tell you.   We went over to the desk and talked about the advisability of getting it up.   He said, now I will tell you about the thing.   I am not a well man; I am liable to die at any time.   I would like you to put this thing in this shape for me and he wrote it."

The foregoing quotations contain all the testimony in the record showing the circumstances under which the paper was signed.

When the action was brought the fact was that no corporation had been organized.

Taking the statement of plaintiff's counsel in open court, that the second paper was not to be regarded as a modification of the first, and the subsequent corroboration of this fact by the plaintiff on his examination, in connection with the statement of the counsel for plaintiff that " we sue " on the second alleged agreement, it is evident that all testimony bearing upon any alleged breach of the first contract must be eliminated except possibly as bearing upon the question of consideration for the second contract.

If the two paper writings are to be treated as independent contracts, it is clear that in the absence of two stated causes of action, it was entirely proper that plaintiff shall declare under which contract he seeks to hold defendant liable.   The justice and counsel evidently tried the case upon the theory that plaintiff elected to stand or fall upon the second contract, as a separate and independent obligation.

We are thus obliged to consider the nature of this instrument. If it has no consideration to uphold it, it must be treated as *nudum pactum.*

It is fundamental that unless a consideration can be shown to support the promise of the defendant, his engagement is not enforcible in law, no matter how strongly in conscience he may be obligated.

As is truly stated in the American and English Encyclopædia of

Law (2d ed., vol. —, p. 675), where illustrations of gratuitous promises are cited, that the application of the principle "has nevertheless been a fruitful source of litigation." What was the consideration which moved the defendant when he executed the memorandum of April twenty-first? There was apparently a feeling of unrest and uncertainty on the part of the plaintiff that the venture contemplated in the original agreement would not be successfully floated. There was no proof that plaintiff then asserted that defendant was not in good faith performing his obligations toward plaintiff, nor is there anything in the testimony from which one could justly determine that plaintiff claimed that defendant had had a reasonable time within which to comply with the provisions of the original contract, and that he desired further time. No consideration for the execution of the agreement was shown, nor can this court, as plaintiff desires, consider the various litigations between the parties, determine the motives of the defendant and capriciously punish him by ignoring well settled principles of law. No consideration for the agreement was established.

A due regard for proper legal procedure, based upon wise rules, founded upon experience, compels a reversal of the judgment.

FREEDMAN, P. J., and GIEGERICH, J., concur.

Judgment reversed and a new trial ordered, with costs to appellant to abide the event.